Next case is also PerDiemCo versus NexTraq, 2025-12-15. Here's Eddie, when you're ready. Now, these are different patents, correct? Correct, Your Honor. I think there were two overlapping patents in here, but the claims asserted in the overlapping patents are different. So this appeal involves two materially different claim groups. Are the patents expired now? Yes. My understanding is they are all expired at this point.  These different claim groups were improperly combined by the district court as representative, and all of the claim groups were invalidated. Let's start with Rule 12. PerDiem specifically alleged the claims implemented concrete improvements to computerized ELD fleet management operations through synchronized ELD triggering and administrative control. But after recognizing PerDiem's allegations in the pleadings at Appendix 7 through 9, the court discounted them and reduced the claims to generalized information management and recordkeeping, which was improper at the pleading stage. Atrix and Berkheimer recognized that technological characterizations and confidentiality disputes cannot be resolved at Rule 12. Turning to the representative claims issue here, the district court correctly held initially that NexTraq had failed to meet its prima facie burden. That's at 14 and 16 of the record. In fact, NexTraq's analysis had two big problems. NexTraq did not identify the claims of the purported representative patents. It just identified the patents. And NexTraq did not provide any analysis of how those patents are representative of claims in other patents. And that should have ended the inquiry. Well, as I understand it, NexTraq's position was it identified the patents, but those are the same patents that the district judge ultimately settled on, except the district judge identified claims one of each of those two patents. Isn't that correct? That is correct. All right. So the flaw in NexTraq's presentation was that it didn't specifically name claim one of each of those two patents. That's one of its flaws. It had more than one. Okay. Yes. Your argument that you were blindsided, in effect, by what the district court did, which was to select claims one of each of those patents, the background of that is they selected the two patents. They just didn't name claim one. They didn't name claim one, and they failed to analyze how materially different limitations could be or properly ignored under a rule of 101 analysis. But that's your general objection to what the district court came up with by way of a representative claim analysis, as I understand it. It's more detailed than that. But, yes, first of all, we object that the district court held that there was no prima facie case because there was no distinguishing analysis provided at all by per diem. And then we object because the district court provided that analysis. So backing up for a minute. So they had the burden. They had the burden to show why different claim limitations should be excused under this eligibility doctrine, and they did not do that at all. We knew that. We addressed the claims that they addressed in their, I'm sorry, the patents that they addressed in their motion, and we showed how those patents were not the same, and we showed how another claim, for example, claim 44 of another patent, had many different limitations. So we met our burden. That's the end of it. Now the district court did something more. So the district court didn't have the opportunity of the parties' dispute before them of these different claim limitations because it wasn't raised. The district court then. Well, the district court had your opposition, which talked about why the two claims that the defendant analyzed were, in your view, materially different, and you also identified that one claim 44. And then the district court, I think consistent with our content extraction opinion, undertook its own independent analysis. So in terms of opportunity to respond, you did file an opposition and a surreply, and you've made arguments to us on appeal with your own claim table, identifying other claims that you would have presented below. So I guess what I'm trying to figure out is where did you lose your opportunity in light of all of that? So when we looked at what they presented, we responded to what they presented, which was two different claims. We responded to those claims. It wasn't our burden to pull out every limitation that was different and analyze it. Indeed, that's their burden, and they didn't do it. And for us to pull that out specifically in our opposition, we were like shooting at rainbows. We don't know what their argument would have been because they didn't raise it. So we responded to what they raised, and indeed, there was no prima facie case. Now, when the district court went on and did its own analysis, that didn't have the benefit of an adversarial positioning because it did its analysis, and it never gave either party a chance to respond. We did present in our reply brief some of those limitations and how we would have responded had we had the opportunity. But there's another problem with the district court's analysis that I think is important. Oh, I wanted to address content extraction too. You mentioned content extraction, and that case actually involved a waiver or a non-opposition to representative claims. But here, there can be no doubt that per diem has always challenged this representative claim analysis. So content extraction is not exactly on point here. There's another problem to the district court's analysis, and that problem is the district court didn't analyze any claims either. The district court looked at the common specification. Let me take that back. Wrong case. The district court, when it analyzed the claims, it did so at a very high level of extraction. It removed, it extracted elements and took them out of their environment with the rest of the claim limitations. So you couldn't really, you couldn't really, well, we didn't have an opportunity to analyze it, but to me that is an error that the district court made that also would require a reversal if you get past the fact that there was never a prima facie casemate in the first place. And, your honors, under TXEC, materially different claim limitations can't be ignored. And Nextrack and the district court never explained why those limitations would be immaterial to eligibility, and that's their duty. So, in looking at the consequences of collapsing these materially different claim structures, it becomes especially clear under ALICE Step 1. How many claims are assertive in this case? That is on page 7 of our opening brief where we provide a table. One, two, three. Eighteen claims, I believe? Eighteen. Eighteen claims over five patents, and these patents had two materially different structures. One was a server-related set of patents. We call those the enterprise patent claims. And the other set of patents was related to the device, the electronic logging device that is on the tracked vehicle. That would have been a lot of analysis for the district court to have gone through each claim limitation. You sued on all these patents, and so you created the issues. And so it's not surprising that the court might have taken some short cuts. Understood, Your Honor. However, if we had been provided with the position that what the differences were that they were asserting were immaterial, then we would have responded to that, but we responded precisely to what they argued. And, again, they didn't meet their burden. Now, you said there were two categories of patents, but I thought that what the district court did was to claim one of the 689 patent representative of the enterprise-centric patents and claim one of the 662 representative of the device-centric patents, right? That's correct. So doesn't that take care of the global problem that you just alluded to, of there being some patents that were device-centric and some enterprise-centric? It doesn't, Your Honor, because the district court didn't separate them out that way. The district court took these and then merged its analysis. But wasn't that his determination that one, 689 was representative of certain? Wasn't that directed to the enterprise-centric claims? The court did not identify that. But, yes, we would say that that is an enterprise claim. But the court —  So I'm having a hard time seeing where the error is there on the part of the court. Because the court — not the claims that the court chose to be representative. It's the analysis that the court did that, number one, we didn't have a chance to respond to, and, number two, that the court merged these two different structures and, at a high level, found that they didn't satisfy Alice. For example, Your Honor, the district court isolated these general concepts and ignored the claim limitations that define how the claims operate. Now, you're making, in part, a due process argument, based on the courts having not adopted the approach suggested by your counsel. In both cases, Your Honor. But we handle that kind of issue all the time, and district courts do as well. That, for example, in the claim construction area, each side may have its own proposed claim construction, and the district court may come up with a third option, frequently comes up with a third option that's different from either. That's not a violation of due process, is it? The claim construction argument, Your Honor, is a bit different. Because if the court — Well, I mean, the short answer to the question is no, it's not. No. The claim construction argument is not. And here, we're dealing with a one — we're dealing with a Rule 12 environment. We are on the pleadings. We queued up our opposition to 101 once we knew it was raised, but then the sand shifted and we weren't allowed to respond. The fact — the simple fact that Nextract failed its prima facie case doesn't allow the court to then do its own analysis that is entirely divorced from the claims itself, taking the abstraction to a level that removes the limitations. And if we'd had a chance to respond, we would have mentioned that and we would have applied the law, and that's what we didn't have an opportunity to do. Looking at Alice Step 1, Your Honors — oh, my goodness. Well, you're into your bottle time. I see that. You can continue if you wish. No, Your Honors, I will — I will. Okay. Mr. Oliver. Good morning again, and may it please the Court. In this case, the claims at issue are directed to the federal rules requiring commercial drivers to track their hours of service. Which rules were in effect before these patents were filed? The complaint not only admits to this, but confirms that the claims are intended to automate tasks that commercial drivers conventionally perform using paper. Tellingly, as we see, the primary argument on appeal is the representative claim issue. Because of that and its discussion, I'll start there. I'd like to correct or clarify a few things. The Next Track motion below did identify representative claims. I know that the Court's decision said that they were not identified. However, there's some important facts that I think need to be clear. What the motion said — and this is in the appendix at 883 — is that this motion addresses representative claims of the 662 and 689 patents. What followed was a specific discussion of Claim 1 of each of those patents. So what the motion said is, we're going to address representative claims from each patent. Here's Claim 1 of this patent. Here's Claim 1 of the next patent. So there was an identification of Claim 1 of each patent in that regard. And I'll also note, critically, per diem acknowledged the identification of Claim 1 of each of those patents. Specifically, in its opposition brief below, in appendix at 970, per diem stated, whether the two claims, it meaning Next Track, identifies in the 662 and 689 patents are representative. And I went on to say in the next page at 971, Next Track's motion only sets forth 662 patent Claim 1 and goes on to note the identification of 689 patent Claim 1. So contrary to that one-off statement in the decision below that no claims were identified as representative, claims were identified, that identification was acknowledged. Now, did you say that those claims were identified as representative of the claims of those two patents? No, those were identified as the representative claims across the patent. I misheard you then. I thought you had said that they represented only the claims of those two patents. No, no. I was trying to make clear that there were specific claims of those two patents identified as the representative claims. Those representative claims were representative across all of the patents.  I understand that. And I'll make one other note before I forget it because I think it's important. There was a mention of whether or not a prima facie case was made. We have to trust that a district court judge knows the difference of when a prima facie case has been made, such that he or she may proceed. I'll note, importantly in this case, the judge made a determination concerning representative and specifically said, I, the court, am going to proceed with the representative claims for most of the patents. However, on one of the patents that was asserted in the litigation below the 595 patent, the court stated in a footnote, I don't think there's been enough done for that one, and therefore I am not going to consider the 595 patent and deny the motion with respect to that one patent. So the district court made a delineation of a prima facie case has been made such that I may move forward with these patents, but not enough for the 595 patent. Now, the 595, I take it, was dismissed. After the judge decided that not enough had been made to move forward with that. For finality purposes, that is out of the case. It was ultimately dismissed so that this appeal could be brought. I think you need to be a little more careful here. Yes, the district court ruled out 595 as being part of, being encompassed by your designated representative claims, but the district court still criticized your arguments for why these two claims are automatically representative of all the other asserted claims, and that is why the district court said it did its own independent analysis. Yes, certainly the decision below took both sides to task on their representative claims arguments. So in that way, one could read the district court order as concluding you did not make your prima facie case. I would argue, Your Honor, that what that indicates is the judge found that there was not enough to prove representativeness, but there was enough for the court to move forward and make its own determination, and as you noted, courts may make its own determination in certain instances. So I think the 595 is the court saying you haven't met your threshold for that one. You have met your threshold, even though I don't like what you did. You did enough for us to consider the representative claims issue. Once that happens, the case law makes clear that it becomes the burden of the patent owner to identify other claim limitations outside of the representative claims and present meaningful arguments as to their distinctive significance relative to the one-on-one analysis. And one other point I just want to make for this case, you mentioned Claim 44, Your Honor. That was actually, I believe, in the companion case earlier. In this case that is being argued right now, in response to the representative claims, and again, what the patent owner is required to do is identify features outside the representative claims. What the patent owner did instead was to take the two representative claims and compare them to each other. But that is not an identification of features outside of the representative claims. Those were the claims that were actually addressed below. So the court was correct to find that the patent owner did not make any meaningful argument concerning any features outside of the identified representative claims, let alone ones that would pertain to the ultimate analysis. For those reasons, the court was correct to proceed under the representative claims. And I'll note with respect to the due process argument. I think the due process argument is a little bit odd, and I'd like to just note some language in the blue brief at 35. Per Diem admits, and I'll just read the language. While Per Diem was on notice of and responded directly to Nextract's representative claim theory, Per Diem was not on notice of the district court's INSEI-IPSO examination and had no opportunity to respond to that. The argument that seemed to be presented on due process here is, yes, Per Diem was aware of Nextract's argument concerning representative claims. And in fact, as I noted below, they acknowledged the identification of the claims from the 689 and 662. But they seem to be arguing, even though they had notice of those issues, meaning the issue to be decided, are these claims from these two patents representative, that somehow they were entitled to the court's examination of the issue. And that is simply not a proper analysis of due process. That's essentially saying, yes, I was aware of the issue to be decided, but I am denied due process unless I know the court's ultimate determination on that issue before I submit my briefs. And that's a simply unworkable standard. For properness of due process, the question is whether or not Per Diem had notice of the issues. And because Per Diem acknowledged the issues in the briefing below, namely whether those two claims of those two patents were representative and did respond to it, they were afforded notice of the issue to be decided. They simply did not provide a meaningful rebuttal. And for that reason, we believe the court's reliance on representative claims is proper. With respect to what claims were asserted below, I still believe that that is an unclear issue because the complaint below, and this is in Appendix 443, Paragraph 131, talking about the 662, said at least one or more claims of the 662 patent. So I don't know that the record below makes clear that the complaint was limiting itself to certain claims. What about the second page of the district court's order, at A3, where it summarized the claims? It summarized the six patents and identified the 18 claims that are issued here. Well, our motion addressed more than those, and we believe those were at issue. The court certainly seemed to maybe believe that there were not all of the claims at issue. But again, perhaps this is all one water under the bridge given the expiration of the patents. But we believe that our motion addressed all of the claims in all of the patents. With that... Did you have a counterclaim in this case? No, it was a motion to dismiss. With that, I'm happy to address the merits. I know that my friend on the other side didn't get a chance to get into the merits, and I should be rebutting. So I don't know if the court wants me to get into any of those issues. You're entitled to a principal argument. Okay. I'll just make a few points on the Step 1 and Step 2. The court did find an abstract idea. That is the collecting, recording, tracking, managing, and so forth of information related to vehicle tracking. These are abstract ideas because, again, like the case we had earlier this morning, it is just about a company keeping track of where its cars are. There's nothing more. There's no invention of any new technology for doing so. In fact, the specification admits that existing mobile devices using existing GPS technology are to be used. And I'll note with respect to Step 1, even on appeal in the blue brief at 45, Per Diem admits that the enterprise-centric claims are directed to controlling access to event information under multiple levels of administrative privilege. This is an admission that what is really at the heart of these claims is the tracking of information and the management of information. Some of the arguments that have been made by Per Diem concerning this is that things such as synchronization should take the claims out of Step 1. However, this court has repeatedly said that synchronization alone is itself an abstract idea, absent some underlying detail on how the computers operate and use that. So synchronizing alone simply does not move the ball. Per Diem also argues that it uses ID codes, and therefore that should remove it from an abstract idea. But as this court noted in Electronic Communications, authentication information such as ID codes does not save a claim from Step 1 analysis. Levels of administrative privilege are just hierarchies of humans and who's in control. And then I'd also note one other argument that's made is that Per Diem believes that there's geofencing recited in the claims, which there is, but somehow that removes this from being an abstract idea. However, that idea was rejected by this court in not only Electronic Communications, but also in Sanderling Management's cited in their briefs and automated tracking solutions. I'm sorry, what was the second case? Sanderling Management. Oh, yes. With respect to Step 2, the court carefully considered and rejected the arguments that Per Diem presented, particularly in the appendix at 40, where the court looked at synchronization and said there's nothing here that really changes the Step 2 analysis. With respect to Per Diem's argument concerning the hierarchy of privileges, the court again noted the argument and rejected it. And finally, with respect to the idea of using an administrator, that's simply not a technological advance that changes the analysis under Step 2, and the court was correct in that regard to reject that. And again here, just looking at example at the 662 patent, we have recitation of a computing device, a database, and a display. No particular arrangement required. No particular structure required. No underlying computer operations that would meaningfully give any hook for a Step 2 analysis that could change the ultimate outcome. And for that reason, we believe the court below was correct in its finding that the claims are unpatentable. Absent any questions? Thank you, counsel. Ms. Addy has some rebuttals on. Thank you. A couple of points, Your Honor. First, we responded to what Nextrack raised, and you can see that in our opposition brief at the district court at Appendix 971 to 973. And yes, we did distinguish the 662 from the 689 because that's what they raised, and we showed the differences, and they didn't raise anything else. At the district court, the district court didn't understand the differences between these and that they were structural differences. But I think it's important to look at the claims, and I'll go directly to Alice Step 2 to do this. Alice Step 2 requires that the combination of all these limitations be considered as an inventive concept. And while co-counsel said there was no organization, and syncing had no specific detail, that is actually not accurate. And if you look at Claim 1, for example, Claim 1 is a computing device. This is Claim 1 of which patent? Oh, I'm so sorry. This is Claim 1 of the 662, and I'm looking at page 24 of the district court decision because it's just easier to read where it's reprinted there. If you look at Claim 1, it's talking about a device. It's talking about a driver that uses the device, and it's talking about the specifics of how that device is configured to the server system. It talks about vehicle conditions and the specific conditions that the vehicle has to be in in order to synchronize. Number one, the driver has to power on, and number two, the vehicle has to be moving. And that's important. That's an important distinction because if it just powers on, you may get inaccurate logging about whether the person was driving. Additionally, if you look further down in the claim, it says record the driving event based on the movement and driving event that occurs after the power on. Again, specifics as to what is synchronizing here. And at Rule 12, it's improper to disregard our complaint where we specifically pled that the order combination was inventive. I contrast that in my last few seconds with the 689 patent, which is at 26 of the decision, and that patent is talking about a server, and it's talking about what happens on the server with the administrators and how they specifically communicate, the driver administrator and the ELD administrator. And you can look through that and see, for example, at B, it's interfacing, the ELD is configured to interface with the computing device to enable the driver administrator to log on. So there's much more detail here that was not addressed. And three of the claims in these set of five claims were not even talked about at all, just those two. Thank you to both counsel. The case is submitted. Thank you, Your Honors.